**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ──────────────────── : | **Document Electronically Filed** |
| EMILY VAN DUYNE, : | |
| : | Hon. Noel L. Hillman, U.S.D.J. |
| Plaintiff, : | |
| : | **Civil Action** |
| v. : | |
| : | No. 1:19-cv-21091 (NLH/KMW) |
| STOCKTON UNIVERSITY, : | |
| : | |
| Defendant. : | Returnable:  April 6, 2020 |
| : | |
| ──────────────────── : | |

---

BRIEF IN SUPPORT OF DEFENDANT STOCKTON UNIVERSITY'S MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)

---

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton NJ   08625-0112
(609) 376-3100
Jaclyn.Frey@law.njoag.gov
Attorney for Defendant Stockton
University

Jaclyn M. Frey,
Deputy Attorney General
    On the Brief

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................ii

PRELIMINARY STATEMENT ..........................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................1

STANDARD OF REVIEW ............................................4

ARGUMENT .....................................................6

   POINT I:  THE COMPLAINT AGAINST STOCKTON SHOULD BE DISMISSED
WITH PREJUDICE ON THE BASIS OF SOVEREIGN IMMUNITY...........6

     A. THE STATE EXERTS SUFFICIENT CONTROL OVER STOCKTON
       FOR THE AUTONOMY FACTOR TO WEIGH IN FAVOR OF
       IMMUNITY. .............................................8

     B. STATE LAW CONSIDERS STOCKTON TO BE A STATE AGENCY. ....13

     C. THE BALANCE OF THE FITCHIK FACTORS WEIGHS IN
       FAVOR OF FINDING THAT STOCKTON IS AN ARM OF
       THE STATE .............................................15

   POINT II: PLAINTIFF'S § 1983 CLAIM SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM ...............................15

     A. PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE THAT SHE
       ENGAGED IN CONSTITUTIONALLY PROTECTED CONDUCT ........17

     B. PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE THAT SHE
       SUFFERED RETALIATORY ACTION, AND ACCORDINGLY,
       FAILED TO ALLEGE A CAUSAL LINK BETWEEN PROTECTED
       CONDUCT AND A RETALIATORY ACTION.. ....................20

CONCLUSION ..................................................24

**TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)......................................5, 15

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)..........................................5

Benn v. First Judicial Dist. of Pa.,
  426 F.3d 233 (3d Cir. 2005)..................................7

Bowers v. The Nat'l Collegiate Athletic Ass'n,
  475 F.3d 524 (3d Cir. 2007).............................passim

Brennan v. Norton,
  350 F.3d 399 (3d Cir. 2003).................................21

Delahoussaye v. City of New Iberia,
  937 F.2d 144 (5th Cir. 1991).................................9

Edwards v. Cal. Univ. of Pa.,
  156 F.3d 488, 491 (3d Cir. 1998)............................19

Fitchik v. New Jersey Transit Rail Operations, Inc.,
  873 F.2d 655 (3d Cir. 1989)............................7, 8, 15

Garcetti v. Ceballos,
  547 U.S. 410 (2006).........................................17

Gorum v. Sessoms,
  561 F.3d 179 (3d Cir. 2009).............................16, 19

Gould Elecs, Inc. v. United States,
  220 F.3d 169 (3d Cir. 2000)..............................5, 6

Jones v. PI Kappa Alpha Int'l Fraternity, Inc.,
  765 Fed. Appx. 802 (3d Cir. 2019).......................passim

Hill v. Borough of Kutztown,
  455 F.3d 225 (3d Cir. 2006).............................16, 17

Howell v. Millersville Univ. of Pennsylvania,
  749 Fed. Appx. 130 (3d Cir. 2018)...........................17

Irizarry-Mora v. Univ. of P.R.,
  647 F.3d 9 (1st Cir. 2011)..........................9, 10, 11

Kehr Packages, Inc. v. Fidelcor, Inc.,
  926 F.2d 1406 (3d Cir. 1991)...............................5

Kashani v. Purdue Univ.,
  813 F.2d 843 (7th Cir. 1987).............................9, 11

Maliandi v. Montclair State Univ.,
  845 F.3d 77 (3d Cir. 2016)............................passim

McKee v. Hart,
  436 F.3d 165 (3d Cir. 2006)...............................21

Md. Stadium Auth. v. Ellerbe Becket, Inc.,
  407 F.3d 255 (4th Cir. 2005)...............................9

Mitchell v. Horn,
  318 F.3d 523 (3d Cir. 2003)...........................16, 21

Newman v. Ramapo College of New Jersey,
  793 A.2d 120 (N.J. Super. Ct. App. Div. 2002)...........13, 14

Packard v. Provident Nat'l Bank,
  994 F.2d 1039 (3d Cir. 1993)...............................6

Quern v. Jordan,
  440 U.S. 332 (1979).......................................15

Suppan v. Dadonna,
  203 F.3d 228 (3d Cir. 2000)...........................21, 22

Thomas v. Independence Twp.,
  463 F.3d 285 (3d Cir. 2006)...........................16, 20

Watson v. Univ. of Utah Med. Ctr.,
  75 F.3d 569 (10th Cir. 1996)...............................9

Will v. Michigan Dep't of State Police,
  491 U.S. 58 (1989)........................................16

**Statutes**

U.S. Const. Amend. I .......................................16

iii

N.J. Stat. Ann. § 18A:3B-6 ............................12, 13, 14

N.J. Stat. Ann. § 18A:3B-34 .................................10

N.J. Stat. Ann. § 18A:3B-39 .................................10

N.J. Stat. Ann. § 18A:64-3 ...................................8

N.J. Stat. Ann. § 18A:64-4 ...................................9

N.J. Stat. Ann. § 18A:64-5 ...................................9

N.J. Stat. Ann. § 18A:64-6 ..............................passim

N.J. Stat. Ann. § 18A:64-18.5 ...............................11

N.J. Stat. Ann. § 18A:64-21.1 ...............................14

N.J. Stat. Ann. § 18A:64-55 .................................12

N.J. Stat. Ann. § 18A:66-170 ................................14

N.J. Stat. Ann. § 18A:66-171 ............................14, 15

N.J. Stat. Ann. § 18A:68-6 ..................................10

N.J. Stat. Ann. § 18A:68-7 ..................................10

N.J. Stat. Ann. § 34:13A-1 et seq. ..........................14

N.J. Stat. Ann. § 52:14B-1 et seq. ..........................12

N.J. Stat. Ann. § 52:14B-2(a) ...............................13

N.J. Stat. Ann. §  59:1-3. ..................................14

**Other Authorities**

43 N.J. Reg. § 1625(a) ......................................10

**Rules**

Fed. R. Civ. P. 12(b)(1) .....................................6

Fed. R. Civ. P. 12(b)(6) .................................5, 15

N.J. Ct. R. 2:2-3(a)(2) ......................................12

**Regulations**

N.J. Admin. Code § 4A:7-3.1 .................................14

## PRELIMINARY STATEMENT

Plaintiff Emily Van Duyne's claim that Stockton University ("Stockton") violated her rights under the First Amendment of the United States Constitution by retaliating against her should be dismissed.  Stockton is an arm of the State of New Jersey, and thus, Plaintiff's complaint is barred by the Eleventh Amendment's sovereign immunity provided to the States.

Specifically, Stockton is not separately incorporated, does not have the authority to sue and be sued, and is not subject to state taxation.  Stockton has the power of eminent domain, and is subject to the New Jersey Tort Claims Act, the New Jersey Contractual Liability Act, and provisions of the New Jersey Administrative Procedure Act.  Moreover, State Colleges and Universities, such as Stockton, must be licensed by the New Jersey Secretary of Higher Education and are subject to the Secretary's oversight.

Further, Plaintiff's complaint should be dismissed because she has failed to sufficiently plead the elements of her constitutional claim.  First, Stockton is not a "person" amenable to suit in federal court under § 1983.  Second, Plaintiff cannot satisfy all the elements of a retaliation claim under the First Amendment.

Given these deficiencies, the complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

Plaintiff has been employed at Stockton since 2010, and is presently an Assistant Professor of Writing and First-Year Studies. See Plaintiff's Complaint ("Compl.") at ¶¶ 8-9. She also teaches the "Women, Gender & Sexuality" course for the Women's, Gender and Sexuality Studies program. Id. at ¶ 11. In April 2019, Stockton's then Provost and President issued letters recommending Plaintiff's tenure, which was granted that same year. See Id. at ¶¶ 10, 28.

As part of the curriculum for the "Women, Gender & Sexuality" course, students participate in an "Activism Project." Id. at ¶ 12. In the Spring of 2018, Plaintiff's students engaged in such a project, concentrating on "sexual assault in fraternity life, with a focus on the unaffiliated fraternities at Stockton University." Id. at ¶13.

During the summer of 2018, Plaintiff alleges that she was troubled by the news that eight separate lawsuits had been filed against Stockton concerning sexual assault. See id. at ¶ 14. In August of 2018, Stockton's President, Dr. Harvey Kesselman, published an article about the allegations in *The Press of Atlantic City*. See id. at ¶ 15. Plaintiff also wrote a response, which she posted on her Facebook page. See id. at ¶

---

[1] The truth of the Plaintiff's factual allegations is assumed for purposes of this motion only.

16.   Later that same month, Plaintiff shared on her Facebook page a newspaper article about eight lawsuits that had been filed against Stockton, having to do with sexual assaults on campus.   See id. at ¶¶ 14, 17.   The article named Jesse Matsinger, a Stockton student, ("Matsinger") as one of the alleged assailants.  See id. at ¶ 17.

Thereafter, Matsinger filed a Title IX complaint, alleging that Plaintiff had discriminated and retaliated against him. See id. at ¶ 19.   Stockton notified Plaintiff that it would be undertaking an investigation into his claims pursuant to its policies and procedures.   See id. at ¶ 19.   While the investigation was ongoing, Plaintiff learned that Matsinger had supplied [Stockton] with materials in support of his Title IX complaint, including copies of Plaintiff's social media posts, photographs of Plaintiff's office, and documentation of Plaintiff's attendance at meetings on campus.   See id. at ¶ 21. On May 1, 2019, Plaintiff filed a police report regarding Matsinger's alleged "stalking-type behavior."   Id. at ¶ 22.

On August 13, 2019 Stockton's Office of Institutional Diversity and Equity ("OIDE") issued a Final Determination Letter, stating that there was insufficient evidence to support a finding that Plaintiff engaged in sex discrimination or sexual harassment against Matsinger.   See id. at ¶¶ 23-24.   However, there was sufficient evidence to support a finding that

Plaintiff retaliated against Matsinger for exercising his right to file a Title IX complaint against her in violation of Section V of the Stockton University Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment (I-120). Id.

As a result of its findings, on August 29, 2019, Stockton issued Plaintiff an Official Reprimand under Stockton University Policy VI-13.2 (Employee Disciplinary Guidelines), the Stockton University Student Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment (I-120), and related Procedure 1200. See id. at ¶ 25. The Reprimand required that Plaintiff take trainings on Sexual Harassment/Discrimination Prevention, Conflict Management, and Retaliation Prevention, and work with a coach for further reinforcement of the trainings. See id. at ¶¶ 26-27.

On December 5, 2019, Plaintiff filed a one-count complaint in the United States District Court for the District of New Jersey against Stockton pursuant to 42 U.S.C. § 1983 ("Section 1983"), seeking declaratory and injunctive relief. See Compl. (ECF No. 1). Plaintiff alleges that Stockton violated her protected rights under the First Amendment when it "retaliated against her for exercising her right to raise concerns about sexual assault on campus." Id. at ¶¶ 1-2.

**STANDARD OF REVIEW**

Stockton moves to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plausibly state a claim on which relief can be granted. "In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). The moving party bears the burden of showing that no claim has been presented. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). However, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this is "not akin to a 'probability requirement,'" it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." Id. This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common-sense." Id. at 679. When the "well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id.

Stockton also moves for dismissal of the complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Where, as here, a Rule 12(b)(1) motion attacks a complaint as deficient on its face, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs., Inc., 220 F.3d at 176.  "[T]he person asserting jurisdiction bears the burden of showing that the case is properly before the Court at all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

**ARGUMENT**

**POINT I**

**THE COMPLAINT AGAINST STOCKTON SHOULD BE DISMISSED WITH PREJUDICE ON THE BASIS OF SOVEREIGN IMMUNITY.**

Stockton is an arm of the state entitled to sovereign immunity and is thus immune from suit under § 1983.  The analysis leading to this conclusion closely tracks the Third Circuit's precedential opinion finding that Montclair State University ("Montclair") is an arm of the state, see Maliandi v. Montclair State Univ., 845 F.3d 77 (3d Cir. 2016), as well as the recent Third Circuit opinion finding that Ramapo College of

New Jersey ("Ramapo") is similarly an arm of the state.  See Jones v. PI Kappa Alpha Int'l Fraternity, Inc. 765 Fed. Appx. 802 (3d Cir. 2019). These cases compel dismissal of the § 1983 claim for damages in the single-count complaint against Stockton.

Sovereign immunity extends beyond the state itself to immunize "entities that are considered arms of the state." Bowers v. The Nat'l Collegiate Athletic Ass'n., 475 F.3d 524, 545 (3d Cir. 2007) (citations omitted).  "[T]o determine whether an entity is an arm of the [S]tate," the Third Circuit applies a "three-part test" first adopted in Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied, 493 U.S. 850 (1989): "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has."  Bowers, 475 F.3d at 546.  All three "Fitchik factors," as they have come to be known, id. at 546 n.23, carry the same weight and are to be considered as "co-equal[s]" when conducting the immunity analysis.  Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240 (3d Cir. 2005).

The Third Circuit has recognized that other Courts of Appeals "have almost uniformly concluded that state-affiliated universities are arms of their respective States," and that "the factors relevant to an Eleventh Amendment inquiry typically

favor immunity in the state college setting." Maliandi, 845
F.3d at 85 (collecting cases). Consistent with this weight of
authority and with the Third Circuit's decisions in Maliandi and
Jones, Stockton is materially indistinguishable from Montclair
and Ramapo in that two of the three Fitchik factors (the
entity's status under state law and degree of autonomy) weigh
heavily in favor of immunity. Thus, even assuming that the
first factor (whether payment of the judgment would come from
the state) does not weigh in favor of immunity, like Montclair
and Ramapo, Stockton should be considered an arm of the state
and all § 1983 claims for damages against Stockton should be
dismissed with prejudice.

> **A. The State Exerts Sufficient Control Over Stockton For The Autonomy Factor To Weigh In Favor Of Immunity.**

Like the University of Iowa, see Bowers, 475 F.3d at 548-
49, Montclair, see Maliandi, 845 F.3d at 97-98, and Ramapo, see
Jones, 765 Fed. Appx. at 808, the governing structure of
Stockton indicates that it lacks independence from the State.
Most significantly, the entire Stockton Board of Trustees
("Board") is appointed by the Governor with the advice and
consent of the Senate. See N.J. Stat. Ann. § 18A:64-3; see also
Maliandi, 845 F.3d at 97 (noting that the Governor "looms large
in the affairs of New Jersey state colleges" with the power to
appoint all members of a state college's board of trustees);

Bowers, 475 F.3d at 548-49.[2]   The Board, in turn, appoints Stockton's President, who "serve[s] at the pleasure of the board of trustees."   N.J. Stat. Ann. § 18A:64-6(g).   Upon the President's nomination, the Board "appoint[s], remove[s], promote[s] and transfer[s]" all other College officers and employees "as may be required for carrying out the purposes of the college." N.J. Stat. Ann. § 18A:64-6(i).   Additionally, the Governor "is statutorily designated as the public 'employer' of all college employees, which vests him with the sole power to collectively bargain on their behalf." Maliandi, 845 F.3d at 97.   And as in Bowers, Maliandi and Jones, the time and content of Board meetings are dictated by statute, and the Board is entitled to expense reimbursement. See N.J. Stat. Ann. §§ 18A:64-4, -5.[3]

_____

[2] These holdings are consistent with those of other Circuits, each of which has found a governor's appointment of a majority of governing board members to show a lack of autonomy. See, e.g., Irizarry-Mora v. Univ. of P.R., 647 F.3d 9, 15 (1st Cir. 2011); Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 264 (4th Cir. 2005); Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 575 (10th Cir. 1996); Delahoussaye v. City of New Iberia, 937 F.2d 144, 148 (5th Cir. 1991); Kashani v. Purdue Univ., 813 F.2d 843, 847 (7th Cir. 1987).

[3] While the Board "bears some hallmarks of an autonomous entity" with respect to its "authority to manage" several administrative and operational aspects of Stockton, these attributes do not make Stockton autonomous for the same reasons the Third Circuit was "not persuaded" that these attributes were enough to consider Montclair to be autonomous. Maliandi, 845 F.3d at 98-99 & n.25.

In addition to gubernatorial appointment of the entire Board, the Secretary of Higher Education, which is a cabinet-level post within the Executive Branch, oversees the institutions of higher education in New Jersey, including Stockton.  See 43 N.J. Reg. § 1625(a); see also Maliandi, 845 F.3d at 97-98 (finding that such oversight weighed in favor of immunity).  Beyond licensing all colleges and universities and approving their programmatic missions, see N.J. Stat. Ann. §§ 18A:68-6, -7, the Secretary is entitled to review and make recommendations on the State Colleges' long-range facilities plans, which must be provided to the Secretary periodically. See N.J. Stat. Ann. § 18A:3B-39.  "The Secretary may also, 'with the concurrence of the Governor,' visit a school at any time to review its financials and compliance with all appropriate laws and regulations."  Maliandi, 845 F.3d at 98 (quoting N.J. Stat. Ann. § 18A:3B-34).

Moreover, as in Bowers, Maliandi, and Jones, the Board is subject to operational constraints and has several responsibilities to the State.  For instance, the Board must annually report the condition of Stockton to the Governor and Legislature, and it must present its annual budget to the Governor, the State Division of Budget and Accounting, and the Legislature.  See N.J. Stat. Ann. § 18A:64-6(d)-(f); see also Irizarry-Mora, 647 F.3d at 15 (finding that these requirements

"strongly indicate" that the State's immunity "embraces the University"); Maliandi, 845 F.3d at 98-99 (finding that these facts weighed in favor of immunity).   Additionally, the Board must spend Stockton's budget in accordance with the general provisions of state budget and appropriations acts, must report any changes in this regard to the State treasury, and may be subject to audit at any time to ensure such conformance. See N.J. Stat. Ann. § 18A:64-6(f); see also Maliandi, 845 F.3d at 98 (finding that these facts weighed in favor of immunity); Kashani, 813 F.2d at 845-46 (noting that the requirement for a university to file a statement of expenditures with a state budget agency demonstrates state supervision).   And because Stockton's funds are public monies, the State Treasurer requires that a bank in which the Board makes a deposit guarantee the deposit if the bank is not otherwise insured by the Federal Deposit Insurance Corporation.   See N.J. Stat. Ann. § 18A:64-18.5; see also Maliandi, 845 F.3d at 98 (finding that this fact weighed in favor of immunity).

Further, Stockton's Board is governed by state regulations applicable to other state entities.   See Maliandi, 845 F.3d at 98 ("New Jersey law further constrains state colleges like [Montclair] by subjecting them to the Administrative Procedure Act, the State College Contracts Law, and the civil service laws."); see also Jones, 765 Fed. Appx. at 808.   For example,

the Board is required to assign duties, determine salaries, and prescribe qualifications for employee positions "in accordance with the provisions of Title 11, Civil Service, of the Revised Statutes." N.J. Stat. Ann. § 18A:64-6(i). With respect to its non-civil service employees, the Board has "final authority to determine controversies and disputes concerning tenure, personnel matters . . . and other issues arising under Title 18A of the New Jersey Statutes." N.J. Stat. Ann. § 18A:3B-6(f). In making this determination, the Board must conduct its hearings in accordance with the State's Administrative Procedure Act, N.J. Stat. Ann. § 52:14B-1 *et seq.*, and the Board's decision is appealable directly to the Appellate Division as a final agency decision. See id.; see also N.J. Ct. R. 2:2-3(a)(2). The Board may also enter agreements for goods and services, but only pursuant to the State College Contracts Law, which requires the Board to publicly advertise and bid "[e]very contract or agreement for the performance of any work or the furnishing or hiring of any materials or supplies," with limited exceptions, exceeding the statutory threshold. N.J. Stat. Ann. § 18A:64-55.

Thus, the State exerts sufficient control over Stockton for the autonomy factor to weigh in favor of immunity.

### B. State Law Considers Stockton To Be A State Agency.

Stockton shares the same indicia with Montclair and Ramapo that led the Third Circuit to conclude that the "status under state law" factor weighed in favor of finding that Montclair and Ramapo are both an arm of the state. See *Maliandi*, 845 F.3d at 91-96; see also *Jones*, 765 Fed. Appx. at 807-808. For instance, Stockton is not statutorily authorized to sue and be sued. See *Maliandi*, 845 F.3d at 94 ("State colleges . . . enjoy no explicit grant of such authority [to sue or be sued], and state case law indicates that, in the absence of an affirmative grant of such power, a state college cannot sue and be sued in its own right."); N.J. Stat. Ann. §§ 18A:64-6; 18A:3B-6. This is significant because "[a]n entity is more likely to be an arm of the State and partake of Eleventh Amendment immunity if it lacks the ability to sue and be sued in its own name." *Maliandi*, 845 F.3d at 94. Stockton is also immune from all state taxation, which "clearly weighs in favor of immunity." *Id.* at 95. Further, Stockton has the power of eminent domain, see N.J. Stat. Ann. § 18A:64-6(l), which also weighs in favor of immunity. See *Maliandi*, 845 F.3d at 95. Finally, New Jersey considers Stockton to be a "state agency" authorized to adjudicate contested cases under the Administrative Procedure Act, see N.J. Stat. Ann. § 52:14B-2(a); *Newman v. Ramapo College*

13

of New Jersey, 793 A.2d 120 (N.J. Super. Ct. App. Div. 2002), which "counsel[s] in favor of immunity." Maliandi, 845 F.3d at 95.

Stockton, Montclair, and Ramapo share several other indicia considered within the "status under state law" analysis that also weigh in favor of immunity. For example, because Stockton lacks the power to sue and be sued, see Maliandi, 845 F.3d at 94-95; N.J. Stat. Ann. §§ 18A:64-6; 18A:3B-6, it falls within the definition of "State" under the New Jersey Tort Claims Act. See N.J. Stat. Ann. § 59:1-3. This fact "counsels in favor of immunity because it implies that, like the State itself, [Montclair] would be immune from tort claims absent the Act." Maliandi, 845 F.3d at 93. Stockton is also a state employer, meaning that it is required to abide by and enforce state policy prohibiting discrimination in the workplace, a policy that applies exclusively to State employers. See N.J. Admin. Code § 4A:7-3.1. The Governor also represents Stockton in its negotiations with the employees' collective bargaining units, and those negotiations are governed by the New Jersey Employer-Employee Relations Act, N.J. Stat. Ann. § 34:13A-1 et seq. See Maliandi, 845 F.3d at 97; N.J. Stat. Ann. § 18A:64-21.1. Finally, Stockton employees participate in the State's health benefit and pension programs, see N.J. Stat. Ann. §§ 18A:66-170,

-171, which "counsel[s] in favor of immunity." Maliandi, 845 F.3d at 95.

Thus, Stockton's status under state law weighs in favor of immunity.

### C. The Balance Of The Fitchik Factors Weighs In Favor Of Finding That Stockton University Is An Arm Of The State.

Stockton, Montclair, and Ramapo are materially indistinguishable with regard to the two Fitchik factors that the Third Circuit found to weigh in favor of finding that Montclair and Ramapo are arms of the state. Thus, like Montclair and Ramapo, Stockton is entitled to sovereign immunity because both the autonomy and status under state law factors weigh in favor of immunity. See Maliandi, 845 F.3d at 99; see also Jones, 765 Fed. Appx. at 807-808. This determination compels dismissal, with prejudice, of the § 1983 claim against Stockton. See Quern v. Jordan, 440 U.S. 332, 342-44 (1979).

### POINT II

### PLAINTIFF'S § 1983 CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if this court has jurisdiction over Plaintiff's claims – which is does not – the complaint fails to state a claim upon which relief can be granted against Stockton and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). See also Iqbal, 556 U.S. at 662. To survive a motion to dismiss for failure to

state a claim, the complaint must contain factual allegations sufficient to state a plausible claim for relief. Id. at 679. Initially, "States," and "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," are not "persons" amenable to suit under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). Thus Stockton is not a "person" amenable to suit and the claims against it must be dismissed. Beyond that, because the complaint fails to properly assert a claim of retaliation under the First Amendment, Plaintiff is not entitled to the declaratory and injunctive relief sought, and the complaint must be dismissed.

Plaintiff alleges that Stockton retaliated against her after she engaged in protected speech. To successfully plead a retaliation claim under the First Amendment, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his [or her] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)); see also U.S. Const. Amend. I. Moreover, the protected activity must be "a substantial factor in the alleged retaliatory action." Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009) (citing Hill v. Borough of Kutztown, 455 F.3d 225,

241 (3d Cir. 2006)).  Plaintiff fails to sufficiently plead any of these elements.

### A. Plaintiff Failed To Sufficiently Allege That She Engaged In Constitutionally Protected Conduct.

Public employees do not engage in protected activity when they "make statements pursuant to their official duties." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."  Id. at 418.  Therefore, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Id. at 421.  "The employees retain the prospect of constitutional protection for their contributions to the civic discourse.  This prospect of protection, however, does not invest them with a right to perform their jobs however they see fit."  Id. at 422; see also Howell v. Millersville Univ. of Pennsylvania, 749 Fed. Appx. 130, 135–36 (3d Cir. 2018).

Plaintiff has not shown that she engaged in protected activity when she "exercise[ed] her right to raise concerns about sexual assault on campus."  Compl. ¶ 2.  The complaint

asserts only two factual allegations regarding activity by Plaintiff that are potentially protected by the First Amendment. First, "Plaintiff wrote a very personal response [to the lawsuits filed against Stockton], posting it on her Facebook page, where it was shared multiple times by other people in the Stockton community." Compl. ¶ 16. Second, Plaintiff "shared a newspaper article about the eight lawsuits on her Facebook page" that "mentioned one of the assailants, a Jesse Matsinger, by name." Compl. ¶ 17. Plaintiff thereafter asserts that that Matsinger filed a Title IX Complaint against her, which Stockton investigated. Compl. ¶ 18.

Plaintiff insinuates that Stockton should have disregarded Matsinger's Title IX Complaint against her. Title IX of the Education Amendments Act of 1972 states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." It is undisputed that Matsinger alleged that Plaintiff created a dangerous and hostile environment against him in an educational setting. Matsinger's allegations and the materials provided in support thereof sufficiently implicated Title IX concerns that warranted investigation by Stockton. An employee does not have a constitutional right to choose whether the University

investigates conduct that implicates contravention of University, state, or federal policy or dictates. Edwards v. Cal. Univ. of Pa., 156 F.3d 488, 491 (3d Cir. 1998) (citation omitted).

Furthermore, Plaintiff has not established that she engaged in constitutionally protected conduct. Plaintiff's Facebook post in response to President Kesselman, and her posting of a related article, is akin to a workplace grievance about Stockton's handling of allegations of sexual assault. Even if the Court were to assume that Plaintiff's Facebook post touched on matters of public concerns, Plaintiff does not show that her speech caused Stockton to take any adverse action. Stockton was required to investigate Matsinger's Title IX complaint, and Plaintiff has not pled any facts that warrant otherwise.

Moreover, Plaintiff has not alleged that her statements were "a substantial or motivating factor" in the determination that she retaliated against Matsinger. See Gorum, 561 F.3d at 184. Plaintiff's claim of retaliation is, at best, self-serving speculation. In fact, Plaintiff admitted that she attempted to file a criminal complaint against Matsinger during the pendency of an investigation of his complaint against her.

### B. Plaintiff Failed To Sufficiently Allege That She Suffered Retaliatory Action, And Accordingly, Failed To Allege A Causal Link Between Protected Conduct And A Retaliatory Action.

Even if Plaintiff's speech and conduct are considered to be "protected" under the First Amendment, she still has failed to satisfy the second and third elements of a retaliation claim under the First Amendment.  That is, Plaintiff has not alleged that Stockton engaged in any specific retaliatory action as a result of her speech.  Instead, Stockton followed its policies and procedures by undertaking an investigation upon receiving a Title IX Complaint against Plaintiff.  See Compl. ¶ 19.  And the action that Stockton took as a result of its investigation – and not as a result of Plaintiff's speech and conduct – certainly does not rise to the level of retaliation.  Accordingly, as there is no retaliatory action, there can be no causal link between such alleged retaliation and the conduct at issue.

Plaintiff has not pled facts sufficient to demonstrate that Stockton engaged in any retaliatory action towards her, much less any actions that would "deter a person of ordinary firmness from exercising his [or her] constitutional rights."  Thomas, 463 F.3d at 296.  A plaintiff must allege that she has suffered an adverse action, i.e. the deprivation of a right or benefit, or a threat to so deprive, at the hands of a governmental entity or agent on account of the exercise of conduct by the plaintiff

that is protected by the First Amendment.  Id.  Further, to be
actionable the alleged retaliatory conduct must have had more
than a de minimis impact on the plaintiff's First Amendment
rights.  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)
(citing Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir. 2000)).

For example, in Mitchell the plaintiff was an inmate who
alleged that, after he filed a complaint against a guard, the
guard planted contraband outside his cell.  318 F.3d at 526.  As
a result, the plaintiff received several months in disciplinary
confinement.  Id.  The court found that "several months in
disciplinary confinement would deter a reasonably firm prisoner
from exercising his First Amendment rights."  Id. at 530.  See
also Rauser v. Horn, 241 F.3d 330, 330 (3d Cir. 2001)
(transferring a prisoner to another facility as a result of
religious practices constituted retaliation).

In the employment context, the Third Circuit outlined the
parameters for retaliatory action by an employer, finding that
"[a] public employer adversely affects an employee's First
Amendment rights when it refuses to rehire an employee because
of the exercise of those rights or when it makes decisions,
which relate to promotion, transfer, recall and hiring, based on
the exercise of an employee's First Amendment rights."  Brennan
v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (internal quotations
and citations omitted).

The Third Circuit has also found that a "campaign of retaliatory harassment" as a result of an employee's speech created a cognizable retaliation claim that could survive a motion to dismiss. Suppan, 203 F.3d at 233. In Suppan, the plaintiff experienced a year-long pattern of harassment and overt threats that culminated in the denial of a promotion. Id. at 230-33.

Here, Plaintiff has not – and cannot – identify any retaliatory action taken against her. In fact, Plaintiff admits that in 2019, Stockton granted her tenure after she engaged in her alleged protected speech. Compl. ¶ 10. Stockton's decision to grant Plaintiff tenure contradicts Plaintiff's allegation of retaliation.

Stockton's other actions, as alleged in the complaint, fall far short of retaliatory action. Specifically, Plaintiff alleges that she "suffered adverse employment actions when Defendant retaliated against [her]" in response to her Facebook posts about sexual assaults on campus. Compl. ¶ 36. The alleged retaliation includes initiating a Title IX investigation following receipt of a complaint against her; issuing a Final Determination Letter and official reprimand, requiring that she take certain trainings and undergo coaching in accordance with the investigatory findings; "threatening Plaintiff to step down from her role as the face of [Stockton's] 'Culture of Respect'

22

initiative, a campus-wide anti-sexual violence initiative"; and issuing a warning letter stating that Plaintiff had been noncompliant with Stockton's Institutional Review Board ("IRB") procedures and professional standards on two occasions. Compl. ¶¶ 28, 36.

With respect to Plaintiff's allegations that she was "threatened" to step down from a campus-wide initiative and that she was improperly issued a warning letter, the complaint is completely devoid of facts that demonstrate that these actions were a retaliatory response to any specific conduct.

In short, Stockton did not retaliate against Plaintiff as a result of her speech. Rather, Stockton was required to follow its policies and procedures and initiate an investigation into allegations of discrimination by a student against a professor, and issued the appropriate discipline thereafter. Stockton was simply performing a required investigation rather than actively seeking to punish Plaintiff as a result of her communications.

Because Plaintiff has failed to plead facts that demonstrate a retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, it follows that she has also failed to allege a causal link between constitutionally protected conduct and any retaliatory action. Accordingly, the Complaint should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Stockton respectfully requests that its motion to dismiss the complaint be granted and all claims against it be dismissed with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Jaclyn M. Frey
Jaclyn M. Frey
Deputy Attorney General

Dated: March 4, 2020