**PATRICIA A. BARASCH, ESQ.**
**RICHARD M. SCHALL, ESQ.**
SCHALL & BARASCH, LLC
MOORESTOWN OFFICE CENTER
110 MARTER AVE., SUITE 105
MOORESTOWN, NJ 08057
(856) 914-9200
ATTORNEYS FOR PLAINTIFF
EMILY VAN DUYNE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EMILY VAN DUYNE, | : | CASE NO. 1:19-cv-21091 (NLH/KMW) |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | Filed Electronically via ECF |
| STOCKTON UNIVERSITY, | : | |
| Defendant. | : | |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ............................. 2

STANDARD OF REVIEW .................................................................................... 4

ARGUMENT ........................................................................................................... 5

I. BECAUSE PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND TO PROCEED UNDER THE EX PARTE YOUNG DOCTRINE SHOULD BE GRANTED, DEFENDANT'S ARGUMENT THAT STOCKTON UNIVERSITY IS SHIELDED BY ELEVENTH AMENDMENT IMMUNITY BECOMES MOOT. ........................................................................ 5

II. BECAUSE PLAINTIFF HAS ALLEGED FACTS IN HER COMPLAINT SUFFICIENT TO ESTABLISH ALL THE ELEMENTS NECESSARY TO MAKE OUT A FIRST AMENDMENT RETALIATION CLAIM, THE COURT SHOULD DENY DEFENDANT'S 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT… ..................................................................... 7

    A.   Plaintiff Has Pled Sufficient Facts To Establish That She Was Engaged In Constitutionally Protected Conduct. ........................................................ 7

        1. Plaintiff Was Speaking On A Matter of Public Concern. ................. 8

        2. Plaintiff Was Speaking As A Citizen And Not In Her Official Capacity As A Public Employee. ........................................................ 9

    B.   Plaintiff Has Pled Sufficient Facts To Establish that Defendant Took Retaliatory Action That Was Sufficient To Deter A Person Of Ordinary Firmness From Exercising Her Rights. ................................................... 11

    C.   Plaintiff Has Pled Sufficient Facts To Establish That There Was A Causal Connection Between Her Protected Conduct And Defendant's Retaliatory Action. ................................................................................................... 14

CONCLUSION ..................................................................................................... 15

# **TABLE OF AUTHORITIES**

**CASES**

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................................... 4

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................................................... 4

Bowen v. Massachusetts,
487 U.S. 879 (1988) ............................................................................................................... 6

Conard v. Pa. State Police,
902 F.3d 178 (3d Cir. 2018) ........................................................................................... 11, 14

Doe v. Princeton Univ.,
No. 17-CV-1614 (PGS), 2018 WL 2396685, at *3 (D.N.J. May 24, 2018) ........................... 5

Dougherty v. Sch. Dist.,
772 F.3d 979 (3d Cir. 2014) ................................................................................................ 10

Ex parte Young,
209 U.S. 123 (1908) ....................................................................................................... *passim*

Flamm v. Am. Ass'n Of Univ. Women,
201 F.3d 144 (2d Cir. 2000) .................................................................................................. 8

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) .................................................................................................. 4

Garcetti v. Ceballos,
547 U.S. 410 (2006) .......................................................................................................... 9, 10

Hartman v. Moore,
547 U.S. 250 (2006) ............................................................................................................. 11

Konits v. Valley Stream Cent. High Sch. Dist.,
394 F.3d 121 (2d Cir. 2005) .................................................................................................. 8

Larson v. Domestic & Foreign Commerce Corp.,
337 U.S. 682 (1949) ............................................................................................................... 6

McGreevy v. Stroup,
413 F.3d 359 (3d Cir. 2005) .................................................................................................. 9

Mirabella v. Villard,
853 F.3d 641 (3d Cir. 2017) ....................................................................................... 11

Pennhurst State Sch. & Hosp. v. Halderman,
465 U.S. 89 (1984) ....................................................................................................... 6

Phillips v. County of Allegheny,
515 F.3d 224 (3d Cir. 2008) ......................................................................................... 5

Pickering v. Bd. of Educ.,
391 U.S. 563 (1968) ............................................................................................ 7, 9, 10

Rankin v. McPherson,
483 U.S. 378 (1987) ..................................................................................................... 7

Schrob v. Catterson,
948 F. 2d 1402 (3d Cir. 1991).................................................................................... 5

Suppan v. Dadonna,
203 F.3d 228 (3d Cir. 2000) ............................................................................... 11, 12

Thomas v. Indep. Twp.,
463 F.3d 285 (3d Cir. 2006) ........................................................................................ 7

Umland v. PLANCO Fin. Servs.,
542 F.3d 59, 64 (3d Cir. 2008)..................................................................................... 4

Va. Office for Prot. & Advocacy v. Stewart,
563 U.S. 247 (2011) ..................................................................................................... 5

Watson v. Rozum,
834 F.3d 417 (3d Cir. 2016) ...................................................................................... 14

**RULES**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 2, 4, 15

Fed. R. Civ. P. 12(b)(6) ...................................................................................2, 4, 5, 14, 15

Fed. R. Civ. P. 15 ....................................................................................................... 1

**STATUTES**

42 U.S.C. § 1983 ......................................................................................................... 2, 7

iii

**PRELIMINARY STATEMENT**

Defendant Stockton University spends the vast majority of its Brief arguing that, because the Eleventh Amendment shields the University from suit in federal court, Plaintiff's Complaint should be dismissed.  However, the remedy for Plaintiff's error in naming Stockton University as the named Defendant here (rather than proceeding, as Plaintiff should have, under the Ex parte Young doctrine by bringing suit against officers of the University acting in their official capacities) is not the dismissal with prejudice of Plaintiff's lawsuit that is sought by Defendant.  Rather, as numerous courts have recognized in similar situations, and as permitted by the Federal Rules of Civil Procedure, Plaintiff should be permitted to file an Amended Complaint so as to utilize the Ex parte Young doctrine to obtain the remedy her Complaint seeks: that the University and its officers be ordered to cease their campaign of retaliatory harassment against her that they are using to chill her First Amendment right to speak out on the issues of sexual harassment and sexual assault.  Accordingly, concurrently with the filing of this Brief in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, Plaintiff is filing a Motion for Leave to File an Amended Complaint.  As the Court will see, Plaintiff's Amended Complaint removes Stockton University as the named defendant and substitutes three officers of the University as defendants, bringing suit against them, pursuant to the Ex parte Young doctrine, only in their official capacities.  And, as set forth in Plaintiff's Brief in Support of her Motion for Leave to Amend the Complaint, the claims being brought by Plaintiff satisfy all the elements required in order to make out a case under the Ex parte Young doctrine.  Accordingly, if the Court grants Plaintiff's Motion for Leave to file an Amended Complaint—Leave to which Plaintiff believes she is entitled given the very liberal standard for granting such leave mandated under Rule 15 of the Federal Rules of Civil Procedure—Defendant's Eleventh Amendment argument becomes

moot, and its motion under Rule 12(b)(1) to dismiss Plaintiff's Complaint for lack of jurisdiction must therefore be denied.

As for Defendant's Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim, that motion also fails given that, as explained below, Plaintiff has alleged facts more than sufficient to support a claim of unlawful retaliation against her by Defendant on account of her having exercised her First Amendment rights.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On December 5, 2019, Plaintiff filed her Complaint against Stockton University in the United States District Court for the District of New Jersey pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint alleged retaliation by the University in response to Plaintiff's exercise of her right to free speech under the First Amendment. Given that Plaintiff was aware that Stockton University was an "arm of the State" and could therefore not be sued for damages in federal court, Plaintiff in her Complaint sought only declaratory and injunctive relief. However, rather than naming officers of the University as defendants and proceeding under the Ex parte Young doctrine to obtain the injunctive relief Plaintiff seeks, Plaintiff mistakenly named Stockton University as the defendant. In lieu of filing an Answer, Defendant proceeded to file its Motion to Dismiss Plaintiff's Complaint, principally arguing that Stockton was immune from suit under the Eleventh Amendment. Plaintiff has now filed a Motion for Leave to File an Amended Complaint to substitute as the defendants in the case three officers of the University in order to pursue her claims under the Ex parte Young doctrine.

In her proposed Amended Complaint, Plaintiff has named as defendants the President of Stockton University, Dr. Harvey Kesselman; the University's Vice President, Dr. Susan Davenport; and the University's former Provost, Dr. Lori A. Vermeulen. As is set forth in

2

the Amended Complaint, Plaintiff alleges that, in violation of the United States Constitution, and in order to chill Plaintiff from exercising her right to speak out on issues relating to sexual assault on campus, Defendants are engaging in an ongoing retaliatory campaign of harassment against her that, to date, has included the following actions: (1) subjecting Plaintiff to a seven-month long, baseless Title IX investigation; (2) pressuring Plaintiff to step down from her role leading Stockton's "Culture of Respect" initiative, a campus-wide anti-sexual violence initiative; (3) falsely accusing Plaintiff of violating University policies after Plaintiff helped distribute T-shirts printed with an anti-rape message to students on campus; (4) falsely accusing Plaintiff of responsibility for commencing without approval a survey of students regarding their experiences with on-campus sexual assault; (5) implicitly threatening Plaintiff, at the time she was granted tenure, that, unless she quieted her advocacy, her future at Stockton might be imperiled; (6) issuing a Title IX Final Determination Letter finding that Plaintiff violated Section V of the Stockton University Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment (I-120), which was then recorded in Plaintiff's personnel file; (7) issuing an Official Reprimand under Stockton University Policy VI-13.2 (Employee Disciplinary Guidelines), Procedure 1200, and related Policy I-120 (the Stockton University Student Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment), which was also recorded in Plaintiff's personnel file; (8) disciplining Plaintiff by requiring her to take, or retake, three different trainings on Sexual Harassment/Discrimination Prevention, Conflict Management, and Retaliation Prevention (requiring her to take trainings in "Sexual harassment/Discrimination" and "Conflict Management" even though the Title IX investigation found she had <u>not</u> engaged in sexual

harassment or discrimination); and (9) disciplining Plaintiff by mandating that she be assigned a coach for additional reinforcement and practical application of the identified trainings.

Because the details of Defendants' campaign of retaliation against Plaintiff in their efforts to suppress her free speech rights are set out in the Amended Complaint that Plaintiff seeks to file, they will not be repeated here, but are rather incorporated by reference into this Brief.

## STANDARD OF REVIEW

Assuming Plaintiff's Motion for Leave to Amend her Complaint in order to proceed under the Ex parte Young doctrine is granted, there will be no reason for the Court to address any further the merits of Defendant Stockton University's motion brought under Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction—a motion based on Stockton's Eleventh Amendment immunity from suit in federal court.

As for Defendant Stockton's motion to dismiss Plaintiff's claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the federal courts will not grant such motions as long as the Complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Umland v. PLANCO Fin. Servs., 542 F.3d 59, 64 (3d Cir. 2008). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The United States Court of Appeals for the Third Circuit has held that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 556). In considering a 12(b)(6) motion, "[t]he question is whether the claimant can prove any set of facts consistent with his or

4

her allegations that will entitle him or her to relief, not whether that person will ultimately prevail." Doe v. Princeton Univ., No. 17-CV-1614 (PGS), 2018 WL 2396685, at *3 (D.N.J. May 24, 2018).  Rule 12(b)(6) "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Moreover, when a court is considering a Rule 12(b)(6) motion, it must (1) assume that the facts alleged in the Complaint are true, Phillips, 515 F.3d at 233; and (2) "give[] [plaintiff] the benefit of every favorable inference that can be drawn from" the allegations in the Complaint.  Schrob v. Catterson, 948 F. 2d 1402, 1405 (3d Cir. 1991).

## ARGUMENT

I. BECAUSE PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND TO PROCEED UNDER THE EX PARTE YOUNG DOCTRINE SHOULD BE GRANTED, DEFENDANT'S ARGUMENT THAT STOCKTON UNIVERSITY IS SHIELDED BY ELEVENTH AMENDMENT IMMUNITY BECOMES MOOT.

In Ex Parte Young, the Supreme Court held that private parties may sue state officers for prospective injunctive relief to keep them from continuing to violate federal law. See 209 U.S. at 159-160.  As such, a state official who enforces "'an unconstitutional legislative enactment . . . comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254 (2011) (quoting Ex parte Young, 209 U.S. at 159-60)). This occurs because "[t]he State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" Id.

Therefore, a plaintiff seeking nonmonetary, equitable relief from state officials to halt violations of her clearly established constitutional rights does not carry the burden of showing an unequivocal waiver of sovereign immunity.  See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 688 (1949). Instead, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-103 (1984) (citing Edelman v. Jordan, 415 U.S. 651, 666-667 (1974)). This is because, while "[d]amages are given to the plaintiff to substitute for a suffered loss, . . .  specific remedies [such as injunctive relief] 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which [s]he was entitled.'" Bowen v. Massachusetts, 487 U.S. 879, 895 (1988) (citation omitted)).

In the present case, Plaintiff seeks only prospective declaratory and injunctive relief, along with attorneys' fees—remedies allowed by Ex parte Young—from Stockton for violating her constitutional rights.  Specifically, Plaintiff asks that the Court declare that Stockton's actions, carried out through its officers, violated her First Amendment rights, and that the Court enter an Order that will require that Stockton (1) remove the August 13th, 2019 Title IX Final Determination and the August 29th, 2019 Official Reprimand Letter from Plaintiff's personnel file; (2) cease and desist from further disciplining Plaintiff by requiring her to take, or retake, three different trainings and issuing her a coach for additional reinforcement and practical application of the identified trainings; and (3) cease and desist from taking any further adverse actions against Plaintiff to prevent her from continuing to exercise her free speech rights under the First Amendment.  Thus, given that Plaintiff will be proceeding under the Ex parte Young

doctrine to seek only prospective injunctive relief, Plaintiff is not barred from bringing suit against the named officers of Stockton, nor is this Court stripped of its jurisdiction in this matter.

II. BECAUSE PLAINTIFF HAS ALLEGED FACTS IN HER COMPLAINT SUFFICIENT TO ESTABLISH ALL THE ELEMENTS NECESSARY TO MAKE OUT A FIRST AMENDMENT RETALIATION CLAIM, THE COURT SHOULD DENY DEFENDANT'S 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

It is well established that a "public employee has a constitutional right to speak on matters of public concern without fear of retaliation," and that "[p]ublic employers cannot silence their employees simply because they disapprove of the content of their speech." Rankin v. McPherson, 483 U.S. 378, 383-84 (1987).

A Plaintiff will successfully make out a First Amendment retaliation claim under § 1983, where she can show that (1) she engaged in a protected activity; (2) the defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising her rights; and (3) there was a causal connection between the protected activity and the retaliatory action. See Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006). As will be set forth below, in the present case, the Plaintiff has sufficiently alleged facts to satisfy all three of the required elements of a First Amendment Retaliation claim.

  A. Plaintiff Has Pled Sufficient Facts To Establish That She Was Engaged In Constitutionally Protected Conduct.

The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern. See Pickering v. Bd. of Educ., 391 U.S. 563, 571-72 (1968) ("Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."). In the present case, because Plaintiff was speaking out on a matter of

7

great public concern—sexual harassment and sexual assault on campuses throughout the United States—and doing so based on her own personal experience as a rape survivor and not in her official capacity as a public employee, she has pled sufficient facts to establish she was engaged in constitutionally protected conduct.  See generally Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 125 (2d Cir. 2005) ("Gender discrimination in employment is without doubt a matter of public concern"); Flamm v. Am. Ass'n Of Univ. Women, 201 F.3d 144, 150 (2d Cir. 2000) ("Gender discrimination is a problem of constitutional dimension, and the efforts . . . . to combat it clearly relate to a matter of public concern.").

          1.        Plaintiff Was Speaking On A Matter of Public Concern.

In the present case, Plaintiff's statements about Stockton's handling of allegations of sexual assault, both in response to President Kesselman's op-ed in August 2018 and in response to a separate newspaper article published that same month that concerned the same eight sexual assault lawsuits against Stockton, cannot be characterized, as Defendant argues in its Brief, see Defendant's Brief at p. 19, as "akin to a workplace grievance."  In her Facebook posts, Plaintiff was not writing to complain about her job nor about her supervisors' management of her work.  Instead, Plaintiff was writing to raise awareness of an issue that not only impacts the campus where she works, but that is widespread and rampant across college campuses throughout the United States.  Plaintiff was in no way writing to have her private rights vindicated, but rather, she was addressing the manner in which public officials from Stockton were mishandling others' claims of sexual assault.

Furthermore, in its Motion to Dismiss, Stockton has failed to allege any particular operational interest of Stockton's that would outweigh Plaintiff's interests in speaking out on matters related to sexual assault campus-wide and generally.  Given this failure by Stockton,

coupled with the fact that Plaintiff's statements in no way impacted Stockton from running an efficient and effective workplace, Plaintiff's statements must be protected by the First Amendment.  See, e.g., McGreevy v. Stroup, 413 F.3d 359, 365 (3d Cir. 2005) ("Because no substantial countervailing administrative interest has been proffered, we hold that for summary judgment purposes, McGreevy's speech was protected by the First Amendment.").

        2.       Plaintiff Was Speaking As A Citizen And Not In Her Official Capacity As A Public Employee.

In Pickering v. Board of Education, 391 U.S.563 (1968), the Court upheld the First Amendment right of a public school teacher to write an article in the local paper on matters regarding the allocation of school funds—making clear in its decision that teachers, simply because they are teachers, do not lose their constitutional right to speak out on matters affecting their students. Pickering v. Bd. of Educ., 391 U.S. 563, 571-72, 88 S. Ct. 1731, 1736, 20 L.Ed.2d 811, 819 (1968) ("Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.").  The Supreme Court's holding in Pickering applies equally well to the facts of the present case, where Plaintiff, a university professor, chose to speak out on her Facebook page on issues affecting not only all the students on her campus, but students nationwide.

While, in its Brief, Stockton attempts to liken this case to Garcetti v. Ceballos, 547 U.S. 410, (2006), see Defendant's Brief at p. 17, the facts in Garcetti and the facts here could not be more different.  Whereas in Garcetti, the public employee's statement at issue was in a memo that he wrote "as part of what he was employed to do," 547 U.S. at 420-21, here, neither of Plaintiff's statements posted to Facebook were made as part of her official job duties as a

9

professor at Stockton.  Plaintiff's first statement was a Facebook post she wrote in August 2018 in response to the op-ed by Stockton's President, Harvey Kesselman, that was published in *The Press of Atlantic City*.  See proposed Amended Complaint at ¶¶ 23-24.  In this Facebook post, Plaintiff, a rape survivor, criticized President Kesselman's piece, which addressed how Stockton was handling several claims of campus sexual assault.  Specifically, Plaintiff spoke in part about the shortcomings she saw in President Kesselman's perspective on the difficulties women may have in coming forward and reporting rape.  Plaintiff did so based on her own personal experience as a rape survivor and on what she had learned from the many female students with whom she had interacted over the years.  By writing from her personal perspective but without addressing any personal "grievances" of her own—instead addressing the issue of campus sexual assault at large—Plaintiff was clearly speaking as a concerned citizen without invoking any of her official job duties or personal rights.  See Pickering, 391 U.S. at 571-72; see also Dougherty v. Sch. Dist., 772 F.3d 979, 985 (3d Cir. 2014) (distinguishing the case from Garcetti given that there was "no evidence suggesting [plaintiff's speech fell with the scope of his duties.).

Plaintiff's second public statement was another Facebook post she wrote in August 2018 that included a link to a newspaper article about the eight sexual assault lawsuits that had been filed against Stockton.  See Plaintiff's Amended Complaint at ¶ 27. The newspaper article, which Plaintiff did not edit, highlight, or change in any way, had named Jesse Matsinger as an alleged assailant.  Just as with Plaintiff's first Facebook post, this second post addressed Stockton's mishandling of the eight sexual assault lawsuits it faced.  At no point was Plaintiff instructed to write this as part of her official job duties nor did she write as an aggrieved employee seeking to vindicate any private rights of her own.

10

> B. <u>Plaintiff Has Pled Sufficient Facts To Establish that Defendant Took Retaliatory Action That Was Sufficient To Deter A Person Of Ordinary Firmness From Exercising Her Rights.</u>

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006) (citation omitted).  Furthermore, the Third Circuit has held that "'First Amendment retaliation claims are always individually actionable, even when relatively minor' and that the deterrence threshold to chill a plaintiff from exercising her First Amendment rights by reason of the defendant's conduct for such a claim is 'very low.'" <u>Conard v. Pa. State Police</u>, 902 F.3d 178, 184-85 (3d Cir. 2018) (quoting <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 127-28 (3d Cir. 2006)); <u>see</u> <u>also</u> Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir. 2000) ("The plaintiffs' complaint alleges a campaign of retaliatory harassment culminating in the retaliatory rankings and asserts that the defendants' conduct resulted in 'mental anxiety, . . . stress, humiliation, loss of reputation, and sleeplessness' as well as loss of promotion. Accepting as true the facts alleged in the complaint, as the District Court was required to do in light of defendants' stipulation, the District Court erred in concluding that there has been no actionable First Amendment violation for which relief would be appropriate.").

Therefore, in addition to classically recognized adverse employment actions, such as discharge, demotion, or discipline "beyond verbal reprimands," there are many other retaliatory actions in the employment context that courts have found keep public employees from exercising their protected rights. See, e.g., <u>Mirabella v. Villard</u>, 853 F.3d 641, 650-51 (3d Cir. 2017) (holding that an employer's "no contact" email to keep its employees from contacting their Township officials met this threshold); <u>Conard</u>, 902 F.3d at 184 (citing <u>Brescia v. Sia</u>, No. 07-cv-8054, 2008 U.S. Dist. LEXIS 35661, 2008 WL 1944010, at *4 (S.D.N.Y. Apr. 30, 2008) (noting

11

that even "a negative employment reference, which has the obvious potential to impede the search for a new job, would deter a person of ordinary firmness from exercising his constitutional rights.").

In the present case, Plaintiff has sufficiently alleged that she has been, and continues to be, subjected to a "campaign of retaliatory harassment," see Suppan, 203 F.3d at 234-35, by Stockton University, despite the fact that she was ultimately granted tenure. Specifically, Plaintiff alleges that Stockton University, acting through the named defendants, retaliated against her by (1) subjecting Plaintiff to a seven-month long, baseless Title IX investigation; (2) pressuring Plaintiff to step down from her role leading Stockton's "Culture of Respect" initiative, a campus-wide anti-sexual violence initiative; (3) falsely accusing Plaintiff of violating University policies after Plaintiff helped distribute T-shirts printed with an anti-rape message to students on campus; (4) falsely accusing Plaintiff of responsibility for commencing without approval a survey of students regarding their experiences with on-campus sexual assault; (5) implicitly threatening Plaintiff, at the time she was granted tenure, that, unless she quieted her advocacy, her future at Stockton might be imperiled; (6) issuing a Title IX Final Determination Letter finding that Plaintiff violated Section V of the Stockton University Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment (I-120), which was then recorded in Plaintiff's personnel file; (7) issuing an Official Reprimand under Stockton University Policy VI-13.2 (Employee Disciplinary Guidelines), Procedure 1200, and related Policy I-120 (the Stockton University Student Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment), which was also recorded in Plaintiff's personnel file; (8) disciplining Plaintiff by requiring her to take, or retake, three different trainings on Sexual Harassment/Discrimination Prevention, Conflict Management, and

Retaliation Prevention (requiring her to take trainings in "Sexual harassment/Discrimination" and "Conflict Management" even though the Title IX investigation found she had not engaged in sexual harassment or discrimination); and (9) disciplining Plaintiff by mandating that she be assigned a coach for additional reinforcement and practical application of the identified trainings. See Plaintiff's Amended Complaint at ¶ 2.

While Defendant argues that Plaintiff cannot base a First Amendment retaliation claim on the fact of Defendant's initiating a Title IX investigation against Plaintiff, see Defendant's Brief at p. 18, that is not what Plaintiff is alleging.  Rather, Plaintiff is alleging in her Complaint that Defendant had no legitimate basis to proceed to find that, by exercising her First Amendment right to speak out generally on the issue of sexual assault on campus, that she had retaliated against Mr. Matsinger.  See Amended Complaint at ¶¶ 41-48.  Nor did Defendant have any legitimate basis find that Plaintiff's reporting Matsinger's stalking of her to the police constituted retaliation, given that the First Amendment protects a person's right to make good faith complaints to law enforcement agencies.  It is certainly "plausible" (the standard to be applied to a motion to dismiss) that but for Defendant's pre-existing animosity toward Plaintiff, it never would have made these findings against her.  Even more significantly, Defendant cannot offer any legitimate explanation for ordering Plaintiff to take trainings in "sexual harassment/sexual discrimination" (as well as "conflict management") when the Final Determination in the investigation found that Plaintiff had not engaged in either sexual harassment or discrimination. See Amended Complaint at ¶¶ 41, 43-46.  Thus, it is likewise "plausible" that Defendant ordered Plaintiff to take these trainings—ones in no way consistent with any of the Title IX investigation findings— only to retaliate against her for having exercised her First Amendment right to speak out on the issues of sexual harassment and sexual assault on college campuses.

Moreover, the allegations in Plaintiff's Complaint are not limited to those regarding Defendant's pursuit of, and findings in, its Title IX investigation of Plaintiff. In fact, Plaintiff's Complaint alleges a multitude of retaliatory actions taken against Plaintiff as a result of her exercise of her First Amendment rights, including pressuring Plaintiff to step down from her role leading Stockton's "Culture of Respect" initiative, a campus-wide anti-sexual violence initiative; falsely accusing Plaintiff of violating University policies after Plaintiff helped distribute T-shirts printed with an anti-rape message to students on campus; falsely accusing Plaintiff of responsibility for commencing without approval a survey of students regarding their experiences with on-campus sexual assault; and implicitly threatening Plaintiff, at the time she was granted tenure, that, unless she quieted her advocacy, her future at Stockton might be imperiled. See Plaintiff's Amended Complaint at ¶¶ 2, 29, 31, 37, and 50.

Given that on a Rule 12(b)(6) motion to dismiss a claim all the facts as alleged by a plaintiff must be accepted as true, Plaintiff here has sufficiently alleged facts sufficient to establish a First Amendment retaliation claim.

    C.    Plaintiff Has Pled Sufficient Facts To Establish That There Was A Causal Connection Between Her Protected Conduct And Defendant's Retaliatory Action.

"A plaintiff sufficiently pleads her case with respect to causation if she pleads that her 'constitutionally protected conduct was a substantial or motivating factor' for the retaliatory conduct." Conard, 902 F.3d at 184 (quoting Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016)). Causation of this type can be proved through timing or "from the evidence gleaned from the record as a whole." Watson, 834 F.3d at 424. Furthermore, "at the motion to dismiss stage, the District Court [is] obliged to accept [a plaintiff's] factual allegations as true and to draw reasonable inferences regarding causation in her favor." Conard, 902 F.3d at 184.

Here, based on the connections Plaintiff has alleged between her actions—posting on Facebook and addressing sexual assault through her teaching, writing, and activism—and the retaliatory actions subsequently taken by Stockton, her Complaint easily survives Defendant's motion to dismiss. Not only does the timeline of events Plaintiff provided in her Amended Complaint suggest that Stockton's actions were in response to Plaintiff's statements, but the written notices and charges Plaintiff received from Stockton explicitly state that her Facebook posts were the impetus for any "investigation" and disciplinary action she faced.

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendant Stockton University's Motions to dismiss Plaintiff's Complaint that it has brought under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

    Respectfully submitted,

    SCHALL & BARASCH, LLC

    By: */s/Patricia A. Barasch*

    Patricia A. Barasch, Esq.
    pbarasch@schallandbarasch.com

Dated: May 18, 2020