UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMILY VAN DUYNE, | 1:19-cv-21091-NLH-KMW |
| Plaintiff, | **OPINION** |
| v. | |
| STOCKTON UNIVERSITY, | |
| Defendant. | |

**APPEARANCES**:

PATRICIA A. BARASCH
SCHALL & BARASCH, LLC
MOORESTOWN OFFICE CENTER
110 MARTER AVENUE
SUITE 302
MOORESTOWN, NJ 08057-3124

    *On behalf of Plaintiff*

JACLYN MICHELLE FREY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112

    *On behalf of Defendants*

**HILLMAN, District Judge**

    This matter concerns claims by a Stockton University ("Stockton") professor that her First Amendment rights have been violated for speaking out about sexual assaults on the Stockton campus. Before the Court is Defendant's motion to dismiss, and Plaintiff's motion for leave to file an amended complaint. For the reasons expressed below, Defendant's motion will be denied

and Plaintiff's motion will be granted.

## BACKGROUND

Plaintiff, Emily Van Duyne, is a tenured professor at Stockton in Galloway, New Jersey. Plaintiff is an Assistant Professor of Writing and First-Year Studies, with responsibilities to coordinate the First-Year Writing Program and serve as an affiliated faculty member in the Women's, Gender and Sexuality Studies ("WGSS") minor. Plaintiff's original complaint asserts one count against Stockton for its violation of her First Amendment right to free speech, which claim is brought pursuant to 42 U.S.C. § 1983. Plaintiff claims that she has suffered numerous retaliatory actions by Stockton for speaking out on issues relating to sexual assault on Stockton's campus. Plaintiff seeks prospective injunctive relief against Stockton in various ways, see Compl., Docket No. 1 at 9-10, as well as attorney's fees and costs.

Pending before the Court is Stockton's motion to dismiss Plaintiff's complaint. Stockton's primary basis for the dismissal of Plaintiff's complaint is that because Stockton is an arm of the State of New Jersey, Stockton is not a "person" amenable to suit under § 1983, and Plaintiff's complaint is barred by the Eleventh Amendment's sovereign immunity provided to the states. Stockton further argues that Plaintiff has insufficiently pleaded her First Amendment claims.

2

Conceding Stockton's position as to its status as an arm of the state and immunity to suit,[1] Plaintiff filed a motion for leave to file an amended complaint. Plaintiff's proposed amended complaint substitutes Stockton as the defendant with three Stockton employees: Dr. Harvey Kesselman, President of Stockton, Dr. Susan Davenport, Stockton's Executive Vice President/Chief of Staff, and Dr. Lori A. Vermeulen, Stockton's then Provost and Vice President for Academic Affairs. Plaintiff's proposed amended complaint asserts her First Amendment violation count against these parties in their official capacities for which she seeks prospective injunctive relief. Stockton has opposed Plaintiff's motion to amend, arguing that it would be futile to permit Plaintiff to file her amended complaint because her claims remain insufficiently pleaded.

## DISCUSSION

**A. Subject matter jurisdiction**

Plaintiff has brought her claims pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

---

[1] As discussed below, whether Stockton is considered an arm of the state has not been definitely determined by any court, and this Court may resolve the parties' current motions without resolving that issue.

**B.     Standard for Motion to Dismiss & Motion to Amend**

It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v.

4

Robinson, 886 F.2d 644, 652 (3d Cir. 1989).  An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  In civil rights cases, "district courts must offer amendment--irrespective of whether it is requested--when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

Assessing a proposed amended complaint for futility is the same as applying the Rule 12(b)(6) standard.  Brookman v. Township of Hillside, 2018 WL 4350278, at *2 (D.N.J. 2018) (citing In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'")).

### C. Analysis

To resolve Stockton's motion to dismiss and Plaintiff's motion to amend, the Court must determine whether it would be futile for Plaintiff's proposed amended complaint to proceed when considering two issues:  (1) whether the substitution of Stockton with three Stockton employees presents a viable First Amendment claim under § 1983, and if so, (2) whether the

5

substance of Plaintiff's First Amendment claim is sufficiently pleaded.

### (1) Plaintiff's proposed amendment to substitute defendants

"The Supreme Court has made clear that [under the Eleventh] Amendment, 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" Christ the King Manor, Inc. v. Secretary U.S. Dept. of Health and Human Services, 730 F.3d 291, 318 (3d Cir. 2013) (quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citing Hans v. Louisiana, 134 U.S. 1, 10, (1890)).  Unless Congress has "specifically abrogated" the states' sovereign immunity or a state has unequivocally consented to suit in federal court, a court lacks jurisdiction to grant relief in such cases.  Id. (citation omitted).

Governmental entities that are considered "arms of the State" are also immune to suit in federal court, and "an entity may be deemed an 'arm of the state' under the balancing test of three co-equal factors" articulated in Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989): "(1) whether the state treasury is legally responsible for an adverse judgment against the entity (the 'funding factor'), (2) whether the entity is treated as an arm of the State under state case law and statutes (the 'status factor'), and (3) whether,

6

based largely on the structure of its internal governance, the entity retains significant autonomy from state control (the 'autonomy factor')."[2] Jones v. Pi Kappa Alpha International Fraternity, Inc., 765 F. App'x 802, 806 (3d Cir. 2019) (some quotations omitted).

Although suits "against a non-consenting state are barred by the Eleventh Amendment, a party can sue a state official under Ex parte Young for acting in violation of a federal law or the Constitution." Constitution Party of Pennsylvania v. Cortes, 824 F.3d 386, 396 (3d Cir. 2016) (citing Ex parte Young, 209 U.S. 123 (1908)). "Based on its landmark holding in Ex Parte Young, the Supreme Court has permitted suits against state officials that seek prospective relief to end an ongoing violation of federal law." Christ the King Manor, 730 F.3d at 318 (citing Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002)). "The theory behind Young is that a state officer lacks the authority to enforce an unconstitutional state enactment, and thus the officer is stripped of his official or representative character and becomes

---

[2] "Although the Fitchik factors were initially intended to determine Eleventh Amendment immunity, our Court has extended their use to § 1983." McCauley v. University of the Virgin Islands, 618 F.3d 232, 240 (3d Cir. 2010) (citing Callahan v. City of Philadelphia, 207 F.3d 668, 670 (3d Cir. 2000)).

7

subject to the consequences of his individual conduct. Plaintiffs can therefore bring suit against state officers, but their remedies are limited to those that are designed to end a continuing violation of federal law." Id. (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)) (other citations omitted). A plaintiff may not be awarded damages or other forms of retroactive relief. Id. (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 103 (1984)).

For claims brought against state actors under § 1983, a plaintiff must assert her claims against a "person." See 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). A state official, however, who is sued in his or her official capacity for prospective injunctive relief is a person under § 1983 because "official-capacity actions for prospective relief are

8

not treated as actions against the State." Id. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Ex parte Young, 209 U.S. at 159-60)).  Thus, a claim brought against an employee of an entity that is an arm of the state in his official capacity pursuant to § 1983 for violations of federal law seeking solely prospective injunctive relief is actionable.

Both Plaintiff and Stockton agree that Stockton is an arm of the state.  Based on that status, the three newly named Stockton employees in Plaintiff's proposed amended complaint are state actors, and Plaintiff may only seek prospective injunctive relief against them in their official capacities.³  These are the precise claims that Plaintiff asserts in her proposed amended complaint.  Plaintiff alleges that (1) Stockton is an arm of the state, about which Stockton agrees, (2) the three individual defendants are state actors by virtue of their employment at

---

³  The issue of whether Stockton is considered an arm of the state and therefore not a "person" under § 1983 has not been expressly determined.  The Third Circuit has applied the Fitchik factors to Montclair State University and Ramapo College of New Jersey, finding those two New Jersey post-secondary educational institutions to be arms of the state.  See Jones, 765 F. App'x at 806; Maliandi v. Montclair State Univ., 845 F.3d 77, 83 (3d Cir. 2016).  Based on these two cases, Stockton argues that this Court should similarly find that Stockton is an arm of the state.  As discussed herein, because the parties agree that Stockton is an arm of the state, the Court does not need to consider the issue at this time.

Stockton, (3) these individual employees in their official capacities have violated and continue to violate federal law, specifically the First Amendment, and (4) she is entitled to prospective injunctive relief.  Thus, the removal of Stockton as a defendant and the inclusion of three individual Stockton employees as defendants would not be futile in the context of determining whether Plaintiff should be permitted to amend her complaint.

Stockton has failed to present any viable argument as to the futility of Plaintiff's amended complaint.[4]  Without the finding of futility, and in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, the Court must permit Plaintiff to file her amended civil rights complaint.

### (2)  Substance of Plaintiff's First Amendment claims

The Court has already concluded that amendment must be afforded to Plaintiff, but the Court must still determine whether her First Amendment violation claims in her proposed amended complaint meet the proper pleading standards, or whether

---

[4] In addition to its arm-of-the-state argument, Stockton argues that Plaintiff's amended complaint is futile because the individual defendants are entitled to qualified immunity. That argument is without merit. See Kentucky v. Graham, 473 U.S. 159, 166–67 (1985) (explaining that when it comes to defenses to liability, an official in a personal-capacity action may be able to assert personal immunity defenses, such as qualified immunity, but in an official-capacity action, these defenses are unavailable).

10

Plaintiff shall be afforded an additional opportunity to plead them.[5]

"'[A] State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.'"  Munroe v. Central Bucks School Dist., 805 F.3d 454, 465 (3d Cir. 2015) (quoting Rankin v. McPherson, 483 U.S. 378, 383 (1987)).  "Free and unhindered debate on matters of public importance constitutes a core value of the First Amendment," and "public employees do not surrender all of their First Amendment rights merely because of their employment status."  Id. (citing Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563, 573 (1968); Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)).

---

[5] The standard for proving a First Amendment violation claim depends on whether a plaintiff is a public employee or a private citizen.  Falco v. Zimmer, 767 F. App'x 288, 298-99 (3d Cir. 2019).  Both Plaintiff and Stockton cite to Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006) for the standard applicable to Plaintiff's claim, but that standard is for a private citizen suit.  See Thomas, 463 F.3d at 296 (explaining where a private citizen sues a public entity and public employees for First Amendment violations, "in order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.").  As noted by the Third Circuit, however, "in their application, both iterations of the elements boil down to similar core considerations."  Falco, 767 F. App'x at 299.

The State, however, "'has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" Id. (quoting Pickering, 391 U.S. at 568. Government employers, like their private counterparts, still "need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Id. (citation omitted). A public employer accordingly may impose speech restrictions that are necessary for efficient and effective operations. Id. (citation omitted). "Thus, '[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. (quoting Garcetti, 547 U.S. at 419) (other citations omitted).

"To establish a First Amendment retaliation claim, a public employee must show that (1) his [activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the [activity] had not occurred." Falco v. Zimmer, 767 F. App'x 288, 299 (3d Cir. 2019) (quoting Munroe, 805 F.3d at 466)) (other citation

12

omitted). "The first factor is a question of law; the second factor is a question of fact." Id. (quoting Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)) (other citation omitted).

For the first factor, the First Amendment protects "a public employee's right to speak as a citizen addressing matters of public concern." Pickering, 391 U.S. at 568. Plaintiff's amended complaint alleges:

> 20. In the Spring of 2018, Plaintiff's students decided to do an activism project that focused on sexual assault in fraternity life, with a focus on the unaffiliated fraternities at Stockton.
>
> 21. Thereafter, during the summer of 2018, Plaintiff, herself a rape survivor and advocate, was troubled by the news that eight separate lawsuits had been filed against Stockton alleging, among other things, that Stockton was negligent in protecting students from sexual assaults that had occurred at an unaffiliated fraternity on Stockton's campus.
>
> 22. On August 7, 2018, Defendant Kesselman published a response to the assaults in an op-ed in *The Press of Atlantic City*. Plaintiff found Defendant Kesselman's response lacking from the perspective of best practices for advocating for sexual assault survivors and from the perspective of someone who herself was a rape survivor.
>
> 23. In light of her concerns about Defendant Kesselman's op-ed article, Plaintiff wrote a very personal reply, posting it on August 7, 2018 on her Facebook page, where it was shared multiple times by other people in the Stockton community.
>
> 24. In Plaintiff's Facebook post responding to Defendant Kesselman's op-ed article, Plaintiff discussed her own experiences as a rape survivor; her concern that Defendant Kesselman's article failed to appreciate the many reasons why women may not report rape; the experiences relayed to her by her students in regard to resisting sexual assault; the effects of sexual trauma on women; and

> the importance of holding responsible the perpetrators of sexual crimes.
>
> 25. After Plaintiff posted her August 7, 2018 Facebook response to Defendant Kesselman's op-ed article, she was contacted by reporter Joseph Hernandez from WHYY, who, following his interview of Plaintiff and another female professor at Stockton, published an article on September 4, 2018 ("Did Stockton U do enough to protect students from members of rogue fraternity"), with the story also running that same day on WHYY's show *Newsworks*. The article cited to a survey that Plaintiff's students had conducted.
>
> 26. Also, in August 2018, to bring further attention to issues of on-campus sexual assault, Plaintiff shared on her Facebook page a newspaper article about the eight lawsuits that had been filed against Stockton. The newspaper article, which Plaintiff did not edit, highlight, or change in any way, mentioned one of the alleged assailants, Jesse Matsinger, by name.
>
> 27. In her Facebook post sharing the newspaper article, Plaintiff made no reference to Matsinger—someone she had never taught nor met and about whom she had no knowledge other than what was reported by the newspaper in its article.
>
> 28. Then, in early September 2018, Plaintiff assisted in distributing to faculty and students T-shirts that were printed with an anti-rape message. . . .
>
> 39. Concerned about the level of surveillance Matsinger had displaying in compiling "evidence" against her, Plaintiff proceeded to file a police report on May 1, 2019 about what she reasonably perceived to be his stalking of her.

(Amend. Compl., Docket No. 12-1 at 6-8, 10.)

Plaintiff alleges that her efforts to raise awareness about sexual assault on campus are protected by the Free Speech Clause of the First Amendment, as applied to the States by virtue of the Fourteenth Amendment, because the content, form, and context

14

of Plaintiff's speech and conduct addressed matters of public concern, her speech and actions were carried out in public forums, including but not limited to Stockton's campus and social media platforms, and her speech and conduct were not made pursuant to her official job duties such that they would warrant discipline by Defendants.  (Id. at 13.)

For the second factor, Plaintiff alleges that in order to chill Plaintiff from exercising her right to speak out on issues relating to sexual assault on campus, Defendants are engaging in an ongoing retaliatory campaign of harassment against her that, to date, has included the following actions:

> (1) subjecting Plaintiff to a seven-month long, baseless Title IX investigation;
>
> (2) pressuring Plaintiff to step down from her role leading Stockton's "Culture of Respect" initiative, a campus-wide anti-sexual violence initiative;
>
> (3) falsely accusing Plaintiff of violating University policies after Plaintiff helped distribute T-shirts printed with an anti-rape message to students on campus;
>
> (4) falsely accusing Plaintiff of responsibility for commencing without approval a survey of students regarding their experiences with on-campus sexual assault;
>
> (5) implicitly threatening Plaintiff, at the time she was granted tenure, that, unless she quieted her advocacy, her future at Stockton might be imperiled;
>
> (6) issuing a Title IX Final Determination Letter finding that Plaintiff violated Section V of the Stockton University Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment (I-120), which was then recorded in Plaintiff's personnel file;

   (7) issuing an Official Reprimand under Stockton University Policy VI-13.2 (Employee Disciplinary Guidelines), Procedure 1200, and related Policy I-120 (the Stockton University Student Policy Prohibiting Sexual Misconduct and Discrimination in the Academic/Educational Environment), which was also recorded in Plaintiff's personnel file;

   (8) disciplining Plaintiff by requiring her to take, or retake, three different trainings on Sexual Harassment/Discrimination Prevention, Conflict Management, and Retaliation Prevention (requiring her to take trainings in "Sexual harassment/Discrimination" and "Conflict Management" even though the Title IX investigation found she had <u>not</u> engaged in sexual harassment or discrimination); and

   (9) disciplining Plaintiff by mandating that she be assigned a coach for additional reinforcement and practical application of the identified trainings.

(<u>Id.</u> at 2-3.)

  Plaintiff's allegations regarding the first factor of her First Amendment violation claims, when accepted as true, plausibly suggest that she engaged in First Amendment-protected activities about an issue of public concern - namely, on-campus sexual assault affecting the entire University community at large. Similarly, Plaintiff's allegations regarding the second factor, when accepted as true, show that it is plausible Stockton administrators have attempted and continue to attempt to chill her speech concerning sexual assault on campus through various forms of retaliatory actions.

  Stockton argues that Plaintiff's speech is not protected by the First Amendment. Stockton, however, does not cite to any

16

authority to support its argument to show that Plaintiff's claims fail as a matter of law on the first prong. For the second prong, Stockton argues that its actions were not First Amendment retaliation and instead it "was simply performing a required investigation rather than actively seeking to punish Plaintiff as a result of her communications." (Docket No. 8-1 at 29.) At the pleading stage, however, the Court accepts as true Plaintiff's allegations in her proposed amended complaint that the individual Stockton employees took measures that were motivated by her protected speech, and the determination of whether those actions relative to her protected speech were actually legitimate employment decisions is an issue of fact that cannot be resolved at this pleading stage in the case. Moreover, accepting that Plaintiff has properly pleaded the first and second prong of her First Amendment violation claims, the burden shifts to the defendants to show that they would have taken the same actions even if Plaintiff had not spoken out about sexual assault on campus as she did. That third prong also cannot be decided in this procedural posture.

Plaintiff's proposed amended complaint is sufficiently pleaded under Twombly/Iqbal and Rule 8, and it shall be deemed the operative complaint in this action.

## CONCLUSION

For the reasons expressed above, Plaintiff's motion for

leave to file an amended complaint will be granted.  Stockton's motion to dismiss Plaintiff's original complaint based on its immunity-from-suit argument will be denied as moot.  Stockton's motion to dismiss Plaintiff's First Amendment claims as insufficiently pleaded will be denied.  Plaintiff's proposed amended complaint, Docket No. 12-1, shall be operative complaint in this case.

    An appropriate Order will be entered.


Date:  October 20, 2020          s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.